Good morning, Your Honors. May it please the Court, I'm Pamela B. Hooley on behalf of the appellant, Tom Carey, in this case. Appearing with me for argument today as well will be Counsel Pat Whalen, also of the Attorney General's Office. He's here to address the constitutional question posed by the Court in its order of last week. I'm here to address the merits of the appeal, which is brought by the Warden, because in this case, Carl Merton Irons was on the facts and circumstances of his crime, his past criminal history, his substance abuse, and some deficient answers and responses to questions during the hearing at issue in this case, which occurred in 2001. The state courts consistently upheld that decision, finding that it was supported by any standard. Under the Anti-Terrorism and Effective Death Penalty Act of 2001, the only way federal habeas relief can be granted is if that decision by the state courts was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Let's assume for the moment that the only basis for the denial of parole date was the nature of the crime and that there were not other valid reasons. Would that be sufficient in your view, to deny parole? Yes, Your Honor. In California, the parole statute itself contemplates that the timing and gravity of the crime are the primary concerns when assessing an individual's parole suitability. Well, the regulation gives you a whole set of factors to weigh on both sides. Is it consistent to say we're not really interested whether there's anything else, but because of this crime, he's going to be kept for his entire term, regardless of whether he's rehabilitated, regardless of whether otherwise he's a suitable candidate? Yes, Your Honor. It would be appropriate when the crime itself reflects that there are public safety considerations, particularly in this case, where those facts and circumstances of the crime went beyond the minimum necessary to sustain the conviction and in concert with the response. Then what's the difference between with parole and without possibility of parole, if the crime itself makes you ineligible for parole? The crime itself may make you ineligible at a particular point in time, Your Honor. That is why the statute calls for evaluating the timing and gravity. Okay. All right. Then my question wasn't really clear. My question was, if that were the only reason, is that a sufficient reason during the entire term of the parole of possible of the sentence? The difference then, I believe, Your Honor, would be that in this case, the term that was applied was a sentence that contemplated a maximum term to life. It didn't guarantee that at any point. No, no, not automatic. My question I'm trying to get at really is, is it an appropriate factor to be the exclusive factor during the entire term up to the end of his life? It can be in some circumstances, Your Honor. That is why the term is to life with only the possibility of parole, not the necessity of parole. And that occurs... But then there's no possibility of parole if the crime itself is the basis for the denial for the entire term of life. He really has had no possibility of parole. He does have that possibility, and it's within the Board's broad discretion in assessing the factors of the crime to determine whether those factors do implicate public safety considerations. There might be a difference, for example, where you would have what could be described as a garden-variety second-degree murder. All right. So Candidate A commits the garden-variety murder. Candidate B commits the kind of murder you would say is egregious. So Candidate A has possibility of parole. Candidate B does not have a possibility of parole. Both candidates do have the possibility of parole, Your Honor. It's just that with Candidate B, the crime may weigh heavily for a longer period of time. It is certainly true that with the... My question wasn't a longer period of time. My question is, is it lawful if it's not for the longer period, but for the entire period? In some circumstances, yes, Your Honor, it would be, because that's what the statute contemplates, that in some circumstances the crime is so egregious that the inmate should be incarcerated for the entire period. So that candidate does not have a possibility of parole? That would be within the Board's discretion if the Board felt that that crime did implicate public safety considerations, yes, Your Honor. The inmate would have the possibility of parole, but the Board might determine that that crime continued to reflect on what kind of public safety concerns there would be. It might be that he presented a danger based on that crime. It may well be that... Isn't that the decision the Court makes when it decides whether it is with possibility of parole or it is not? When they say with possibility of parole, doesn't that mean that it's not the kind where the crime has disqualified him automatically for the rest of his life? And again, Your Honor, it doesn't automatically disqualify. It may be that as the passage of time continues and the inmate has more distance between him and the crime, the Board may well believe in the context of all the other factors that the inmate would at that point be suitable for parole. But in this case, that didn't happen. And more importantly, in this case, given the context of the Board's impressions during the hearing that some of Mr. Iron's responses indicated that he wasn't quite ready for parole because they weren't sure how he would react in a similar circumstance, that provided an appropriate basis in this case to deny parole. And there was no clearly established United States Supreme Court authority that would prevent the State courts from upholding the parole on those bases. And that's why the appellate seeks reversal in this case, because there is a sufficient basis to find this inmate unsuitable given the crime, the past criminal history, the substance abuse, and those answers that conveyed an impression of, gee, Mr. Irons, I'm sorry, today you're not quite ready. And he is eligible for continued consideration. That's another basis for the appeal insofar as the district court's decision, in effect, hamstrung the Board with respect to a remedy. Assuming there were a due process violation, in this case, the appropriate remedy would have been to return the matter to the Board to consider all the facts and circumstances together, including the crime, the past social history, and in this case, any other conduct that had occurred since the 2001 hearing. Kennedy. So there's no claim that they didn't consider all of the factors, is there? No, Your Honor. I'm talking about with respect to the remedy that the district court. But, I mean, why would that be the remedy if they have already considered all of the factors? Because at this point the question of the, I mean, if the district court were right and there was a violation, the violation wasn't the failure to consider everything. They did consider everything. They just came to, if the district court were correct, they came to an unlawful or arbitrary conclusion. The general notion would be, Your Honor, that in the context of failing to proceed with appropriate due process considerations, the Board should be given the opportunity to do that again. And although it's not binding on this Court, a California court considering a similar proposition suggested that it would be appropriate to allow the Board to exercise its administrative decision-making process rather than imposing a judicial determination of how to weigh all the facts and circumstances. So, and even Federal law recognizes that the States should be allowed to proceed in accordance with their own laws. Nonetheless, the other problem with this case is that, unfortunately, the State Court's interpretation of its own statute in the Dannenberg matter. In Dannenberg, the California Supreme Court made clear that, indeed, an inmate could be withheld from parole for the entire term if his crime reflected on public safety considerations, as it does in this case. Dannenberg's case is instructive for analyzing whether it was appropriate for the Board to rely on Mr. Iron's crime, because in Dannenberg it was appropriate for the Board to rely on Mr. Iron's crime. And in this case, Mr. Iron's crime was a similar crime that involved sustained violence, and then after the 12 shots, two more stabs to the back. And, again, in context with the answers that suggested that he wasn't sure how he would react when presented with a similar circumstance, that provided a sufficient basis for his reaction. Kennedy was no when he was asked whether he would do this again. Yes, Your Honor. The one passage that the Mr. Iron's attorney pointed to in their briefing was a no. However, if you examine the portion of the record where the Board is giving its decision, which I believe is at 204 to 208, the panel member specifically comments on multiple responses. He wasn't talking about just one example. He did try to give an example that morning of what he recalled and what his impressions were of how the answers had come across. And I think it's telling that he said the answers aren't quite there. So that contemplates allowing the decisionmaker who was in the room and heard the words and saw how they were delivered under the AEDPA deference standards. That is entitled to a presumption of correctness and should not have been overturned by the district court in this case. In summary, to allow time for co-counsel to address the constitutional questions, it has to be remembered that the State court decisions at this time did not violate any clearly established United States Supreme Court authority in any manner because nothing suggested that it would be improper to rely on unchanging circumstances or the witness's demeanor during the hearing to deny parole. Good morning, Your Honor. May it please the Court, Pat Whalen, also for the warden appellant in this case. In its order last week, this Court asked the parties to give an indication of their views as to whether the standards in 2254 D.1 are constitutional. They are. When Congress grants jurisdiction to the federal courts under 2254 to hear a hateful case, the question for the court to decide at its most general level is whether or not the writ should be granted. And in answering that question, there are two substantive law questions for the federal court to decide. The first is whether there's been constitutional error. And in making that assessment, the federal court is free to look to any source it chooses in determining whether there's constitutional error. The second substantive question is whether or not the State court adjudication was contrary to or an unreasonable application of clearly established Supreme Court precedent. And in answering that second question, too, the federal court can look to any authority it chooses to. In fact, this Court has held that it will look to its own authority to determine what is clearly established law. When Congress has granted that authority under 2254, there's been no choice of law restriction by Congress. Rather, there's been simply a restriction on the scope of the remedy. When the federal court decides to deny habeas relief under 2254, it need not reach either of those two questions. It may decide the case on independent and adequate State grounds, or it may find the claim barred under Stone v. Powell. It is only when the court is inclined to grant relief that it must answer both of those substantive law questions in the affirmative. And in doing so, again, there is no restriction on the choice of law that the court may look to in reaching those legal questions. That's a somewhat puzzling answer. You say, oh, he restricts the remedy, but isn't the remedy inextricably connected with what the law is? No, because the remedy is to be granted not only when there is constitutional error, but when there is also an unreasonable or contrary decision by the State court. It's not enough to merely have an unconstitutional ruling. It must be unreasonably so. So the remedy is not inextricably linked just to the question of constitutionality. But what you're saying is that the writ of habeas corpus for constitutional error is limited jurisdictionally to cases where not only are constitutional rights violated, but they are violated in an unreasonable manner. No, Your Honor. The court has jurisdiction to entertain all habeas cases as it does, and frequently denies them because, for any number of reasons. So the court always has jurisdiction to entertain. Well, it needs to receive the jurisdiction from Congress. Correct. So if your position is that Congress gave the courts the jurisdiction, and then they told the courts, but when the State has acted unconstitutionally, that doesn't matter unless it was objectively unreasonable for the State to act unconstitutionally. Yes, because the jurisdiction Congress has conferred is not limited to simply an inquiry as to whether there's been a constitutional violation. There's more to the jurisdictional grant. Well, that's how you characterize it probably gives you your answer to the question. If you characterize it as a jurisdictional grant only to review unreasonably unconstitutional violations, then you could well be correct. But if you characterize it differently, you have a different problem. If you characterize it as I thought you did, as saying Congress gave jurisdiction to review constitutional violations, and then imposed a condition that you can't grant relief unless the constitutional violation is an unreasonable one, then it's a different question. The question may be phrased differently. I don't know that the outcome is any different. Well, try to answer the second question, the differently phrased question, which is Congress said to the courts, the federal courts, you may grant habeas relief in cases in which the State has acted to deprive its citizens of federal constitutional rights. And then it said, but they did it in a separate statute. It said you can no longer grant relief when the State acts unconstitutionally, but the State may continue to violate the constitutional rights of its citizens as long as it doesn't do so in a manner that is objectively unreasonable, that a court would find that when it by objectively unreasonable, what I mean is that it violates the rights, but a court might not recognize that because it's not so clear. In 2254, the statute does not read as Your Honor has characterized it. It doesn't say you can grant relief and then you can't grant relief. It says... I just asked you to assume that proposition. If we had a different statutory grant of jurisdiction... Okay. You don't want to answer hypothetical questions. If the court, if Congress granted jurisdiction in one case or in one section of a statute and took it away in another, it might come down to simply a... I didn't say it took it away. Yeah. Whether you characterize this as a jurisdictional question or not, as I said, may determine an answer to a question. And you prefer to assume for purposes of these questions that it's a jurisdictional issue. Well, I'm relying on the text of the statute, Your Honor. And the statute says that the court can entertain habeas claims that are when a person is held in violation of the constitution positive treaties of the United States, but it goes on to say that relief may only be granted in a smaller set of cases. So the jurisdiction is there to entertain the entire universe of cases. But the jurisdiction... So when you decide the case, you must apply this rule, that constitutional rights may not be vindicated if the court that deprived you of the rights couldn't tell clearly that they were doing it or that they misconstrued the constitution in a way that some rational person might do it. That what matters is not that your constitutional rights are violated, but that the court that enforced the violation wasn't acting irrationally. Yes, that's correct. And if they tell you that's what you do when you decide constitutional cases, that you're bound by that rule, that doesn't limit, you believe, the court's right to vindicate the constitution? The court is free to rule on the constitutional question that is presented in every habeas case. The court can find constitutional error. There's no problem with that. But that is not the end of the inquiry. The court must make an additional finding before it can grant habeas relief. Because that is the question that Congress has given to the Federal courts to decide, whether or not to grant the writ. Congress has not given to the courts simply the question of whether there was constitutional error in the State court proceeding. If there are no other questions, I'd like to reserve the remainder of time for rebuttal. Well, I'd like to – you gave an interesting answer. And, of course, this is, as you know, just a preliminary inquiry to see what the State's position is. And if we were to go further, we'd also want to get the views of the United States as well as the State. But the statute tells us to look at clearly established Federal law as determined by decisions of the United States Supreme Court. Now, what decisions do we look at when we look at decisions of the United States Supreme Court? That seems to set the standard of the Constitution as it was at the time of the enactment of the statute, does it not? I don't read the statute that way. I don't think there's any prohibition in the statute from prospective decisions of the United States Supreme Court from being considered. I'm sorry, I didn't get your answer. I don't see any prohibition in the statute against considering prospective decisions of the United States Supreme Court that come down after the enactment of the statute. You would clearly establish meaning as of the time the court has the case rather than as of the time the statute was passed. Well, the relevant point of inquiry is clearly established at the time the State court was making its adjudication. I take it the Supreme Court itself is bound by the statute? Yes, under cases arising under 2254. And so they would always have to look at what they had established before they got the case, would they not? Certainly. So how would they ever advance beyond what the law was at the time of enactment of the statute? They can create new rules of constitutional law in direct review, in certiorari review. How can they create them if they can only apply what was there? Well, in certiorari review, they're not going to get the State cases of this kind except in habeas. Well, that's not correct. In California, anyway, once a criminal defendant exhausts his direct review in State court, he can petition for writ of certiorari. Oh, that's true. So they could get it that way. Right. So that would be the one source of new law. Well, and they can also petition for certiorari from the denial of State habeas. So there's another avenue there. In either instance, the Supreme Court can review the constitutional question. So there were still two new sources of law coming from the Supreme Court? Yes. But there can be no development of law in the circuits. Is that your position? Well, I wouldn't go so far as to say that, because certainly when the United States Supreme Court is reviewing a case on certiorari review from a ñ in a direct review context, if it hasn't answered the question, it may certainly look to the lower Federal Court's views in deciding the constitutional question. There's nothing that prohibits that. But it's only on habeas review that the Supreme Court and any Federal court is restricted to clearly establish Supreme Court authority. Thank you, counsel. Thank you, Your Honor. May it please the Court, Anne McClintock on behalf of Mr. Carl Irons. I want to touch briefly ñ oh, I'll start with the constitutionality question, since that's what we're talking about most recently. I think the answer to both Judge Reinhart and Judge Noonan's concern is that it's ñ yes, the statute creates both a restriction on the judicial branch's power to look ñ to determine what the constitution means, both temporally by limiting it to what is clearly established Supreme Court precedent at the time that the case is before the court. And there's plenty of case law in ñ when you look back at the cases that the order suggested we take a look at in Marbury v. Madison, you follow that all up to City v. Bourne, the limitations that Congress can put on the judicial branch are not just to the lower inferior courts that it has created. It's ñ you can't tell a district court judge any less than you can tell the Supreme Court that this is what the Congress cannot tell them, what the constitution means, what it requires. So there's a temporal problem with it. There is also the effective power problem that Judge Reinhart was trying to address, I think, that once this Court determines or the district court determines that there has been a constitutional violation that is prejudicial to Mr. Irons, it is then prohibited by Congress from effectuating that decision. That's clearly contrary to United States v. Klein and those cases where Congress changed the rules and ordered directly to prohibit an effective remedy to the ñ the person who was litigating his constitutional claim. So I think on both aspects, the statute is unconstitutional. That said, the State just is ñ on the merits of this case are just fundamentally wrong in their characterization of what clearly established Supreme Court precedent means and what Dannenberg and Rosenkranz mean under State law. And if you look at the simplest way of looking at a case, there are only three Supreme Court cases that I need, Greenhalz, Board of Pardons v. Allen, and Superintendent v. Hill, that define the clearly established Supreme Court precedent that grants ñ that determines both that Mr. Irons had a constitutional violation that was prejudicial to him and that he is entitled to release. Kennedy. That gets you to the point, what, where there's a liberty interest and where they need some evidence. Is that true? Right. Those three cases give me that there is a liberty interest in parole for him and that the State cannot act in an arbitrary manner in denying that liberty interest. I would quibble whether some evidence is the right standard because there's plenty of Supreme Court precedent that says it should be substantial evidence. We heard it in the earlier case in an immigration context where you're reviewing administrative decisions. But that's ñ that's not the way. It was brief. So even if I accept some evidence, which is what I'm willing to do, there is no evidence before the board to support this decision other than the arbitrary decision that, well, the crime was bad. I mean, it was especially cruel and atrocious. And the problem with what the Attorney General's argument was, and it directly goes back to your original question, Judge Reinhart, which is that they cannot under the State statute, under its interpretation both in Dannenberg and in Rosenkranz, the State cannot say this crime, even though you've been sentenced to life with possibility of parole, this crime prohibits forever your ñ the board's ñ or the board ñ let me twist it around. The board cannot point to a specific crime and say the facts of that particular case forever allow us to say that you are unsuitable. Because the question isn't what is it about that case, that crime. It is his current danger to society. Under the regulation, they phrase it in terms of does he pose an unreasonable risk of danger to the public. And where it is important the facts about the crime and the reason that the board has this very deliberate information-gathering process is to find out what is it about the specifics of this crime that may not be in the judgment, that may not be in the probation office. That's why we want to hear from victims. That's why we want to hear from the district attorney's office. How does that reflect in the context of what he has done as reflected by his central file, the psychological reports? Don't you agree that they could, let's say the first time? I gather you come up, can come up for a parole hearing even before what seems to be, let's say you get 17 years to life. Your parole hearing starts well before 17 years, doesn't it? The initial parole suitability hearing is supposed to take place a year before your minimum eligible parole release date. Your eligible date before the 17 years? Yes. Okay. So let's say it was 13 years would be your eligible date and you get a hearing after 12 years. Do you think the State can't at that point say this is a type of crime that is inherently so dangerous that we're not going to consider this candidate at this point? No, because that's not what the State law requires. What they can say is you haven't, let me back up. The Federal court couldn't grant relief at that point. If the case instantly got from the board exhausted, went through all the procedural requirements and was before the district court judge, at that point he couldn't grant relief because a year before his MEPD, he doesn't have a liberty interest in parole because he hasn't satisfied the front end of his sentence. It was 17 years to life. Then let's move on to the 17 years. The 17 years comes up and the State says this is not the run of the mill crime. This is a fairly vicious crime. And we think it's, the crime itself shows sufficient inherent dangerousness that we're not going to let him out at the very beginning, at the first, when he's satisfied the minimum. We're just going to rely exclusively on the crime for that. Would that be reversible error? Yes. Because the question, because it's an arbitrary decision. One, it's not applying State law. The State law is does he pose a current risk of danger to the public now? So at that hearing, they have to decide what is it about the crime, the facts of the commitment offense that link that behavior 17 years ago to his current dangerousness, dangerousness. And the reality is that the board is always going to have something before it. It may be that it has someone who has hidden in his cell for 17 years, not done anything wrong, not done anything positive. And in that circumstance, they can look at that record and say, well, there are these factors. For example, in Mr. Iron's case, he admitted drug use, alcohol use. He had no moral compass, I believe is the way he phrased it. He was in a position where he was angry and he didn't manage that anger. And it came out in a very criminal, immoral act. Well, if he sat in his cell for 17 years, there would be a linkage between that unsuitability because there is nothing that shows he is now capable of handling not drinking, dealing with frustration, dealing with things in a constructive, positive, not a danger to the society way. So the notion, part of the rhetoric that's difficult in these cases is that we speak in terms of they only rely on the commitment offense. And that's never the case. The board has the central file before it. It has the psychological reports. It has the counsel's reports. Where the board makes the mistake is it does not say where that connection is between these facts that are historic and unchanging and his current dangerousness at that hearing. And that's the problem with the State's argument regarding the specific facts in Mr. Iron's case. They look at it in four reasons for why the board was justified. The crime, the past criminal history, drug abuse, and his ambiguous answer to one question. Judge Reinhart, you've already addressed and redressed in the brief. The ambiguous answer is just factually not correct. Now, Judge or Commissioner Munoz said, I think you said, and then he characterized it. If it were a different context, if he said, you know, you admitted killing 14 other people and that's not in the record, that would be an arbitrary basis for making this decision. This one is not that egregious, but the past criminal history, the board didn't rely on that as a basis for unsuitability. They didn't characterize it as something that poses a violent risk because all his criminality was nonviolent. It was his drug abuse, his drug involvement, his alcohol use, and then some arrests about resisting, not resisting, but failing to register for the draft. So those are just red herrings. That's not part of what the board said. So what we're left with is what the district court pointed to, is we have unchanging facts about the fact that he had a drug. That was a question that I was really trying to get answered. And that is that, assuming that the other two reasons that they gave have no support in the record, and that the only reason that they, that the State has for denying what he was like at that time, is there no, is the State unable to take the position with respect to a particular individual that his crime is such that even though he's sentenced to a fixed minimum to life with the possibility of parole, that they really think that this offense is such that he should never be paroled? Are they unable to do that under this system? Yes. They're unable to do it. And why is that? You know, I can think of people who have received sentences of, you know, life with possibility of parole that probably society would not want ever released. And you'd say the State can't make that determination on the basis of what they did. They have to see whether they have, they're now more suitable. My answer is not as simple as it, they can't, they can consider it. No, but they can't base it exclusively on that. Not exclusively, because the question that the board has to answer is what is the inmates, the prisoners' dangerousness now? Does he pose an unreasonable risk of danger to the public? And the commitment offense by itself cannot, for the reasons you pointed out, cannot be the be-all and end-all of that answer. If it were, it would de facto change his life with possibility of sentence into a life without possibility of sentence. And this is in a plea context, but in a plea context, it would render the inmates' knowledge that once I'm no longer in danger, however that's determined, I look at this in, and it's troubled because I have a degree in mathematics. The sentence here is not numerical, but it is mathematically still well-defined. It begins at 17 years, and even that is a term of art, because of custody credits and because of behaviors, that 17 years isn't really calendar date 17 years. It could be 15 years, it could be something past. The other end is still well-defined. By statute, it's when he no longer poses a danger to society. How that is determined, that's the question they have to answer. And the commitment offense itself cannot trump that question. We cannot allow the State, because the State can change that rule prospectively, but the rule when he was sentenced, when he committed his offense, was he would be released once he no longer posed an unreasonable risk of danger to the public. And the commitment offense facts cannot veto that question. And in fact, in this case, one of the reasons that the district attorney, the probation office, those sentencing information, the victim's information is brought into this question is to find out, in those egregious cases that Judge Reinhart is probably thinking of, and we can all envision them, there's lots of information that doesn't make it into the court record about the crime, or that we find out about it afterwards. The board has the ability and the right to get that information and use it in its assessment of how egregious, whether it's especially heinous, atrocious, or cruel, and use that information in connection with deciding, is he a current danger? In this case, there is no extra information. The district attorney's support for his parole is important because it's telling the board there's nothing extra out there. And in fact, in the later hearing, the district attorney says, you know, the jury got it right. This wasn't a first-degree murder. So it's not like the Rosencrantz case, where the governor points to, well, you're minimizing your role. There was much more deliberation. Your crime really was, factually, on these other things that the jury didn't use in finding that it was a second-degree murder. There is information out there that shows that there are issues in here that's still linked to your current dangerousness that he has not addressed. That's not the case with Irons. Even the, excuse me, the investigating officer, at the time that he was arrested, when he, you know, he intervened in having an innocent person arrested for his killing. And the investigating officer, I've never seen this in a record. I don't know if any of you have, said, you know, he is an honest, a candid person, and he should be released as soon as possible because he doesn't, this is unlikely to reoccur. That view is echoed in the probation officer report. He interviewed these people then. It is echoed in the judges, sentencing judges, who sat through the trial. So even though he contested his guilt because they charged him with first-degree murder, the sentencing judge in the sentencing transcript, and that's part of the appendix to our appellee's brief, adopts that view of him as well. So in this particular case, we don't even have to go to your hypothetical. Judge Reinhart, because we already have a case where, at the initial hearing, there is already a breakage between the horrible killing, you know, taking of a life that happened in a recognition of who Carl Irons is as a human being. And now we are, 21 years later, in the review of this case, even more in real life, that there is no linkage. The linkage has been broken by his affirmative conduct in prison. He was not inherently the person, at the time he killed, who would be at risk of killing again. And he has then gone out, within the confines of the prison, through his violence prevention programming, through his karyos programming, through his involvement in Catholic chapel, through his studying and involvement in a Buddhist ministry. He has sought out all the mechanisms that he can find to redefine a moral center for him. And that is the question, that is an aspect of the question that the panel had decided. You know, when you describe his sentence, you say his sentence is 17 years minimum, to the point where he is no longer dangerous. What would you base that statement on? Penal Code 3041, subsection B. If that statute didn't exist, we wouldn't be here. I mean, that's where we go back to Greenhalghs and we go back to Allen, and Board of Pardons v. Allen. It is that statute that defines his exit date. It's that statute that is sufficiently mandatory that creates the liberty interest. If it were some other phraseology, in the part of the history of California sentencing, before 1977, I think it was, everyone had indeterminate life sentences. And part of the problems were that nobody would know when they were going to come up, when they were going to get released. If that was the scheme that was still in place, there would be none of these cases in federal court. What do you think of the state's suggestion that we should remand to the parole board? It overlooks the fact that the district ordered a remand to the parole board. Well, it ordered the parole board to set a date. Judge Noonan is asking, what do you think of the suggestion that we remand so that they can reconsider the merits? Well, the problem with it is, as the district court judge pointed out in his order, I mean, he has looked not just at this hearing, but the next three hearings. And the same problems repeat. There is nothing that the state provided to the district court that shows that there's anything else out there that would change the substantive, that would provide some evidence to support any of these other criteria that would support unsuitability. Well, it certainly would change the context if they knew that their action was considered to be unconstitutional. And there is the parallel of what's happened in the immigration cases that we pretty regularly now remand to the board of judges. Well, I think the immigration context is somewhat different because of the plenary power that has historically been given to the executive branch. Well, of course, it is different, but it's just an analogy. It is.   I think it's a very good question. My answer, though, is that, first, standards of review. I have to remember law school. His remedy is review for an abuse of discretion. So that is very deferential to what the district court judge did. Second, your question about, you know, now the board's aware that it's doing something unconstitutional. Judge Hollis through Judge Carlton know that the board is aware that what they're doing is unconstitutional in a generic sense. They've had many cases. There are many cases in the state court system where the board has been doing this or the governor, through his rescission power, back to the decisional review unit of the board, have been relying on unchanging historical facts to base a parole unsuitability decision. So the board's not unaware of this issue. It's not like this came out of left field for them. The district court judge has a great deal of experience in dealing with, and even in the record in this case, of, you know, the side issue of whether there is a no parole policy issue. He didn't grant relief on that, but that is part of what informs the district court's concerns about the limitations that he should or should not place on the remedy. And in this particular court's experience, I mean, they have granted relief where they just said remand it to the board and then have gone through the experience of post-judgment litigation on, you ignore the order temporarily, you ignore the order because you did exactly what we just told you was unconstitutional. And I think given the deference that's owed to the district court under the abuse of discretion standard, there's nothing wrong with it. I have 25 seconds. All right. For your 25 seconds, let me ask you, you said that you find in the maximum date being when he's no longer dangerous in 3041B? 3041B. All right. That says the panel or board shall set a release date unless it determines the gravity of the offense or the timing and gravity of past, et cetera, is such that consideration of the public safety requires a more lengthy period of incarceration. Right. If you read that statute literally, what they looked through was how grave was the offense that was committed. And that's what you said they can't look to. The language in there that is most important, and this is the way the state courts have interpreted their statute, and this is binding on us, is that the focus of that subsection is public safety. And the commitment offense and all the other things that are mentioned in there are factors, they're criteria that they can look at. And those are reflected in the code of regulations where they say you're going to look at here are some criteria supporting unsuitability, here are other criteria, and in fact, the board is obligated under state law to look at all available evidence. That's why we get all this input from other parties. But the focus of that statute in the way that it has been interpreted by state law is that it's public safety. That's the question. Thank you, Your Honors. Thank you, counsel. If I may start where counsel began with the three cases she's relying upon, Greenholz, Allen, and Hill. Greenholz and Allen merely held that procedure is necessary, notice, and an opportunity to be heard, and a decision. Mr. Irons. I think she's just using those to show there's a liberty interest. You don't disagree with that? Correct, Your Honor. I would suggest, however, that in light of the Dannenberg case, which interpreted California's own statute and found that an indeterminately sentenced inmate could be incarcerated for the entire period of time, namely two life, that that suggests that there is not a liberty interest in release on parole. What there is is a liberty interest in consideration for parole, and that is what occurred here. With respect to the Hill case, Greenholz itself suggests that Hill might be too high a standard for evaluating parole consideration, because with parole, what the board is trying to do is predict whether an indeterminately sentenced inmate, if released, would threaten public safety in any way. That's not an equation in math yet. You don't disagree with the sum evidence standard, do you? I would suggest, Your Honor, that it is not clearly established that the sum evidence test is required to be applied in parole context. The United States Supreme Court has never held that. California has certainly interpreted its own statute that way, but neither Greenholz nor Allen requires the sum evidence test in this context. I'm out of time, but if the Court would like me to continue, I shall. If you have something urgent you would like to say, we'll give you another 30 seconds or so, but otherwise. Just that, unlike counsel's point, this isn't a line with determinate points on either end. This is a line that's more like an arrow that can continue forever. Nothing in the statute, nothing in clearly established United States Supreme Court law says that the crime is an end point that is fixed and that the board must pick a point before an end, otherwise that converts the term to a determinate sentence. And that's not what happened here. And because what the State courts did didn't violate any clearly established law, the district court should be reversed. Thank you, counsel. Thank you both very much. Thank you, all three of you. The case just argued will be submitted.
judges: Reinhardt, Noonan, Fernandez